UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| BRANDON FERRILL | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 1:15-cv-00524-TWP-MJD |
| | ) | |
| CRANE 1 SERVICES, INC. | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**REPORT AND RECOMMENDATION ON MOTION TO DISMISS**

This matter comes before the Court on Defendant's Motion to Dismiss Amended

Complaint for Failure to State a Claim. [Dkt. 17.] For the following reasons, the Magistrate

Judge recommends that the Court **GRANT IN PART** and **DENY IN PART** Defendant's

motion.

**I. Background**

Crane 1 Services, Inc. ("Defendant") began employing Brandon Ferrill ("Plaintiff") in or

around April 2013.[1] [Dkt. 11 ¶ 7.] Subsequently, Defendant provided Plaintiff with its Safety

Manual and Employee Manual (collectively, the "handbook"). [*Id.* ¶ 8.] The Safety Manual

states, *inter alia*:

> a. [a]ll employee[s] of this company, by law [Sec. 5(b) Occupational Safety and Health Act of 1970] shall follow these safety rules and practices. Employee must inform their supervisor immediately of any situation beyond their ability or authority to correct.
> b. only qualified and/or licensed employees may operate any piece of equipment.

---

[1] Defendant has stipulated to the facts alleged in the Amended Complaint, [Dkt. 11], for the purposes of the motion at bar only. [Dkt. 18 at 2 n.1.] The Court also accepts the factual allegations in the Amended Complaint as true for the purposes of ruling on this Motion to Dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009).

1

     c.     [w]ork shall be planned and supervised to prevent injuries in all work processes, particularly when working with equipment and handling heavy materials.

     d.     [f]ollow safety rules applicable to their job . . . [o]bey all posted warning and/or instructional signs.

     e.     [p]owered industrial equipment – Forklifts, cranes, hoists, scissors lifts, etc shall only be operated by trained and authorized employees.

[*Id.* ¶ 9 (alterations added by Plaintiff's complaint).] The Employee Manual states, *inter alia*:

     a.     violation of any of the following rules and regulations could result in disciplinary action taken against the employee up to and including termination . . . [v]iolation of safety rules or Company safety policies . . . [n]eglect and mishandling of tools or other equipment . . . [u]nauthorized use of equipment, tools and materials . . . [p]erforming unsafe acts that result in injury/accident or damage to equipment, tools or other material."

     b.     Forklifts, Crane, Hoists, Scissors Lifts, etc. shall only be operated by trained and authorized employees.

     c.     Vehicles are not to be parked in the working area of any heavy or mobile equipment.

[*Id.* ¶ 10 (alterations added by Plaintiff's complaint).] Plaintiff alleges that Defendant ordered him to operate a scissor lift in a manner inconsistent with the lift's signage and purportedly in a manner inconsistent with 29 C.F.R. § 1926.451(c)(2)(ii). [*Id.* ¶¶ 11-14.] Plaintiff alleges that he refused this order, believing that complying with it would violate the handbook, and would subject Plaintiff to personal civil or criminal liability. [*Id.* ¶¶ 15-18.]

Plaintiff further alleges that Defendant disciplined him for his refusal to operate the lift.[2] [Dkt. 11 ¶¶ 21, 25-29.] This alleged discipline occurred over a six-month period and ranged from a two-week suspension to, ultimately, termination. [*Id.* ¶¶ 23-43.]

---

[2] However, there were allegedly several other events pertaining to Plaintiff in this time period, *e.g.* his filing of a complaint with the Indiana Occupational Safety and Health Commission [Dkt. 11 ¶ 22]; a two week unpaid suspension pertaining to Plaintiff's weekend work status [*id.* ¶¶ 23-24]; the imposition of a probation and a work supervisor, a prohibition against contacting customers, and the revocation of his vehicle and on-call privileges [*id.* ¶ 26]; issues relating to training [*id.* ¶¶ 29-33]; Plaintiff's leaving work due to sitting outside in cold weather [*id.* ¶¶ 29-37]; a Last Chance Agreement [*id.* ¶ 39]; a prohibition on Plaintiff speaking to other employees [*id.* ¶ 40]; and a flat tire precluding Plaintiff from driving to a worksite [*id.* ¶¶ 41-42]. As noted *infra*, these events may be relevant to Plaintiff's ability to establish a causal link between his refusal to operate the lift and his termination, but they are not dispositive of the current motion to dismiss.

Plaintiff now claims that the above-quoted handbook provisions constituted promises on which Plaintiff detrimentally relied when refusing to operate the lift. [*Id.* ¶¶ 46-58.] Plaintiff therefore alleges that Defendant is liable to him under a theory of quasi-contract and/or promissory estoppel. [*Id.* ¶¶ 46-51.] In addition, Plaintiff claims that he was unlawfully terminated for activity protected under the public policy exception to the at-will employment doctrine outlined in *McClanahan v. Remington Freight Lines, Inc.*, 517 N.E.2d 390 (Ind. 1988). [*Id.* ¶¶ 52-54.]

In support of its Motion to Dismiss, Defendant argues that Plaintiff's quasi-contract/promissory estoppel claim fails because the handbook did not constitute a promise to Plaintiff with the expectation of reliance. [Dkt. 18 at 4.] Defendant further argues that Plaintiff has failed to satisfy the requirements of the *McClanahan* exception by failing to show that he refused the order to operate the lift in order to avoid actual personal liability. [*Id.* at 5-6.]

## II. Legal Standard

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the sufficiency of the plaintiff's complaint, not the merits of the case. *Iqbal*, 556 U.S. at 677 (2009). The court must construe the complaint in the light most favorable to the plaintiff, "accepting as true all well-pleaded facts alleged, and drawing all possible inferences in [plaintiff's] favor." *Tamayo v. Blagojevich,* 526 F.3d 1074, 1081 (7th Cir.2008). Pleadings must provide "enough facts to state a claim to relief that is plausible on its face." *Hecker v. Deere & Co.,* 556 F.3d 575, 580 (7th Cir.2009) (citations omitted). Allegations need only to state a possible claim, not necessarily a winning claim. *See Herdrich v. Pegram,* 154 F.3d 362, 369 (7th Cir.1998), *rev'd on other grounds,* 530 U.S. 211 (2000).

When considering a motion to dismiss, the Court generally does not consider matters

3

outside of the pleadings; if consideration of such matters is necessary, the motion is typically treated as one for summary judgment under Rule 56. Fed.R.Civ.P. 12(d). The Court may, however, consider documents 1) that are referenced in the complaint; 2) that are concededly authentic; and 3) that are central to the plaintiff's claim. *Hecker,* 556 F.3d at 582 (adopting a "relatively liberal" approach to considering such documents on a motion to dismiss); *see also Hirata Corp. v. J.B. Oxford and Co.,* 193 F.R.D. 589, 592 (S.D. Ind. 2000) ("[I]f a document is specifically referenced by the complaint and central to the plaintiff's claim, we may consider that document as part of the pleadings if it is attached to a defendant's motion attacking the sufficiency of the complaint.").

### III. Discussion

### A. Promissory Estoppel

In Indiana, employment is strongly presumed to be at will. *Orr v. Westminster Village North, Inc.*, 689 N.E.2d 712, 717-18 (Ind. 1997).  However, an employee may "invoke the doctrine of promissory estoppel to rebut the presumption that employment is at will and thus require the employer to justify [an] adverse employment action" by showing: "(1) the employer made a promise to the employee; (2) the employee relied on that promise to his detriment; and (3) the promise otherwise fits within the Restatement [(Second) of Contracts § 90] test for promissory estoppel." *Michael v. St. Joseph County*, 259 F.3d 842, 847 (7th Cir. 2001) (citing *Orr,* 689 N.E.2d at 717). The Restatement additionally states:

> A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. The remedy granted for breach may be limited as justice requires.

Restatement (Second) of Contracts § 90(1).

Under Indiana law, a "clear and forthright" statement in an employee handbook that

"disclaim[s] creating an employment contract" and "state[s] in addition that the employee can be terminated at the will of the employer" serves as a "complete defense to a suit for a breach of contract." *Workman v. United Parcel Service, Inc.,* 234 F.3d 998, 1000-02, (7th Cir. 2000) (applying Indiana law). Furthermore, a "disclaimer that is effective against a claim of breach of contract is also effective . . . against a claim of promissory estoppel" because promissory estoppel requires that "the promise be worded consistently with its being intended to be enforceable." *Id.*; *see also Biddle v. BAA Indianapolis, LLC,* 860 N.E.2d 570, 581 (Ind. 2007) (party asserting promissory estoppel must establish that the promise was made with the expectation that the promisee will rely upon the promise). Indeed, "a handbook disclaimer of the employee's at-will status effectively negates the possibility of clear promissory language necessary to a claim for promissory estoppel as well as for breach of contract." *Long v. Copart of Conn., Inc.*, 2005 WL 3087850, at *7 (N.D. Ind. Nov. 16, 2005).

Here, Defendant moves for dismissal of the promissory estoppel claim on the grounds that the statements contained in the handbook are not enforceable under a theory of promissory estoppel because the handbook did not change Plaintiff's status as an at-will employee. [Dkt. 21 at 3.] Plaintiff opposes dismissal on the basis that the handbook contains "numerous promises that defendant will make a voluntary commitment to establish a working environment with certain terms, conditions, and privileges of employment . . . with the specific expectation that employees [will] rely upon them when performing work[.]" [Dkt. 19 at 7.]

Although the parties in this case discuss at length whether or not promises were actually made in the handbook, [Dkt. 18 at 4-5; Dkt. 19 at 4-9; Dkt. 21 at 1-6], the Court sees no need to

reach this issue. The handbook's "Acknowledgement of policies and procedures" page,[3] signed by Plaintiff, states:

> I further acknowledge that I understand that all employees are employed **at will, and may be discharged at any time for any reason**. I further understand that **nothing in this company policy manual is intended to create any legal rights for employees**, express or implied. I further understand that this company policy manual is only designed to give employees guidance as to the Company's usual practices, and such practices may be deviated from at the Company's discretion.

[Dkt. 18-1 at 1] (emphasis added). This statement clearly precludes an assertion of promissory estoppel, as it forecloses any possibility that Defendant (the purported promisor) had or should have had any expectation whatsoever of Plaintiff (the purported promisee) relying upon the handbook (the purported promise). *See Biddle,* 860 N.E.2d at 581 (party asserting promissory estoppel must establish that the promise was made with the expectation that the promisee will rely upon the promise). In fact, the disclaimer quoted above is even broader than the disclaimer in *Workman*, *supra*, which read: "this Policy Book is not a contract of employment and does not affect your rights as an employee of UPS." 234 F.3d at 1000. Despite this disclaimer's brevity, the Seventh Circuit, applying Indiana law, still found that the disclaimer in *Workman* indicated that any purported promise in the handbook was not made with the expectation of the promise being enforceable, *id.* at 1001-02, and the broader disclaimer at bar is surely at least as effective as the short-form disclaimer in *Workman*.

Therefore, in light of the handbook's language disclaiming the creation of a legal right

---

[3] Although Plaintiff contests that the Court may consider the attachment at [Dkt. 18-1], *see* [Dkt. 19 at 6 n.1], the Court may consider this attachment if it is specifically referenced by the Complaint, is central to Plaintiff's claim, and is attached to Defendant's motion attacking the sufficiency of the Complaint. *Hirata,* 193 F.R.D. at 592; *see also Hecker*, 556 F.3d at 582. Here, the Complaint refers to the document, *see* [Dkt. 11 ¶¶ 8-10, 17], much of Plaintiff's action centers around the handbook, *see, e.g.* [Dkt. 19 at 6-7], and the document was attached to Defendant's motion in support of dismissal. *See* [Dkt. 18-1.] Therefore, the Court will consider the attachment at [Dkt. 18-1.]

and preserving the at-will relationship, the Court finds that Defendant neither had nor should have had an expectation of Plaintiff relying upon any purported promises in the handbook, and the promissory estoppel claim therefore fails. *See Biddle,* 860 N.E.2d at 581; Restatement (Second) of Contracts § 90(1). Accordingly, the Magistrate Judge recommends that Defendant's Motion to Dismiss pursuant to Rule 12(b)(6) be **GRANTED** with respect to Plaintiff's promissory estoppel claim.

### B. *McClanahan*

Although Indiana law has a strong presumption of at-will employment, *see Orr,* 689 N.E.2d at 717, one "separate but tightly defined exception to the employment at will doctrine" is that "firing an employee for refusing to commit an illegal act for which he would be personally liable" contravenes public policy and therefore constitutes wrongful termination. *McClanahan v. Remington Freight Lines, Inc.,* 517 N.E.2d 390, 393 (Ind. 1988). This exception is narrow, and cases permitting actions under the exception "generally involv[e] plaintiffs allegedly terminated in retaliation for refusing to violate a legal obligation that carrie[s] penal consequences." *Meyers v. Meyers*, 861 N.E.2d 704, 707 (Ind. 2007) (collecting cases). With respect to the nature of the illegal act for which the employee could be personally liable, there is no distinction between liability under federal and state law for *McClanahan* purposes. *Walt's Drive-a-Way Service, Inc. v. Powell,* 638 N.E.2d 857, 858 (Ind. Ct. App. 1994).

The Supreme Court of Indiana has not ruled on the issue of whether an employee's mere belief that the activity he is ordered to perform is illegal would be sufficient to support a *McClanahan* exception. *See Rodriguez v. Westside Limited Partnership*, 2008 WL 5247340, at *3 n.2 (S.D. Ind. Dec. 15, 2008) (whether an employee's "reasonable and good faith belief that she would be personally liable for breaking the law" would be sufficient to invoke the

*McClanahan* exception is an "interesting question" of law); *Williams v. Old Dominion Freight Line, Inc.,* 2006 WL 842384, at *4 (N.D. Ind. Mar. 28, 2006) ("The court cannot locate. . . any case law to suggest that the State of Indiana would consider an employee's *belief* regarding the illegality of the requested action sufficient to sustain a cause of action of wrongful termination.").

However, even if it is unclear whether an employee's mere belief regarding the illegality of an order is sufficient for the *McClanahan* exception, the employee is not typically required to specifically state or cite a statute contemporaneously with his refusal to perform the allegedly illegal act, and the employee may eventually rely upon more than one source of law to establish the alleged illegality of the refused act. *See, e.g. McGarrity v. Berlin Metals, Inc.,* 774 N.E.2d 71, 75, 78 (Ind. Ct. App. 2002) (financial employee generally refused to participate in tax-related dishonesty and was terminated; court recognized that employee could have been liable for numerous specific statutory violations, including fraud, violating accounting regulations, conspiracy, etc.).

Accordingly, employees in some circumstances may generally cite safety concerns when refusing to perform an act and still enjoy the *McClanahan* exception through a *post hoc* showing of the illegality of the refused act. In *Haas Carriage, Inc. v. Berna*, for example, a truck-driver employee was terminated after he refused to pick up a load, claiming that it could not be hauled safely under the circumstances. 651 N.E.2d 284, 286 (Ct. App. Ind. 1995). Neither the employee's original objection nor his complaint referenced any specific Indiana statute that hauling the load would have violated. *See id.* at 286-87. In opposing the defendant's motion for summary judgment, however, the employee invoked three Indiana Code provisions, including one defining a Class B misdemeanor for recklessly attempting to endanger the safety or property

8

of others. *Id.* at 288. The Indiana Court of Appeals determined that this invocation of the statute was sufficient for the plaintiff survive summary judgment, such that any lack of specificity in the employee's original objection or pleading was not fatal to his claim. *Id.*

Furthermore, to survive a motion to dismiss for a *McClanahan* claim, the plaintiff does not need to definitively prove that the refused act would have been illegal; rather, the plaintiff must only plausibly allege that he was fired for refusing to commit an illegal act for which he would have been personally liable. *See Hecker*, 556 F.3d at 580; *McClanahan*, 517 N.E.2d at 393. For example, in *Saunders v. Wesleyan Healthcare Operations Co*, a medical employee refused to give Mr. B's medication to Mr. A and was terminated. 2011 WL 5386634, at *2-3 (N.D. Ind. Nov. 7, 2011). In her complaint, the employee alleged that she was fired for refusing to commit an act that would have violated either federal drug laws or Indiana's criminal conversion statute. *Id.* The court denied the defendant's motion to dismiss the claim because, "[d]rawing reasonable inferences in the Plaintiff's favor, [Plaintiff's] allegations support[ed] her contention that had she complied with her supervisor's instructions she would have violated" the federal drug law; *i.e.*, what "the Defendants asked the Plaintiff to do *may* have been illegal." *Id.* (emphasis added). The court noted that "many more facts [were] needed to determine whether such a violation would have taken place" if the employee had not refused the supervisor's instruction, but the court still allowed the claim to move beyond the Motion to Dismiss stage. *Id.*

Here, Plaintiff's Complaint alleges that he "reasonably and honestly believed he would be subject to personal civil or criminal liability if he used the scissor lift on September 12, 2014," and that his "refusal to operate the scissor lift on September 12, 2014, constitutes protected activity under *McClanahan*." [Dkt. 11 ¶¶ 18, 19.] Plaintiff also identifies specific sections of the Code of Federal Regulations that Plaintiff's operation of the lift allegedly would have violated.

9

[Dkt. 11 ¶¶ 13, 32.] Plaintiff concedes that these violations would have exposed him only to civil—not criminal—liability, [Dkt. 19 at 11], such that the violations would not have carried the "penal consequences" often required to invoke *McClanahan*. *See Meyers*, 861 N.E.2d at 707. In his Response in Opposition to Defendant's Motion to Dismiss, however, Plaintiff also alleges that he could have been personally criminally liable under Indiana's criminal recklessness statute had he operated the lift. [Dkt. 19 at 11 (citing Ind. Code § 35-42-2-2).]

Defendant contends that Plaintiff's failure to show that Plaintiff's operation of the lift *would have* been illegal and *would have* subjected him to personal liability is fatal to Plaintiff's claim. [Dkt. 21 at 7.] The Court does not agree at this stage in the litigation. On a Motion to Dismiss, the Court must construe the complaint in the light most favorable to the plaintiff, "accepting as true all well-pleaded facts alleged, and drawing all possible inferences in [Plaintiff's] favor." *Tamayo,* 526 F.3d at 1081. One such possible inference here is that Plaintiff's operation of the lift would have exposed him to personal criminal liability under the criminal recklessness statute, which liability would be sufficient to invoke *McClanahan*. *See Haas Carriage*, 651 N.E.2d at 286 (*McClanahan* exception possible when refused conduct would have plausibly violated three Indiana statutes, including a Class B misdemeanor for recklessly attempting to endanger the safety or property of others).

Defendant also contends that Plaintiff's failure to cite or contemplate a statute at the time of his refusal to operate the lift or at the time of his termination precludes his claim. [Dkt. 21 at 7, 9.] As explained above, however, employees refusing to perform an act while generally citing legal or safety concerns without a particular legal citation have been allowed to utilize the *McClanahan* exception. *See Haas Carriage*, 651 N.E.2d at 286 (employee generally cited safety concerns when refusing to haul an unsafe load); *accord, e.g.*, *McGarrity,* 774 N.E.2d at 75, 78

10

(financial employee generally refused to participate in tax-related dishonesty).[4]

In sum, when drawing all possible inferences in Plaintiff's favor, *see Tamayo,* 526 F.3d at 1081, the Court finds that Plaintiff's complaint states a plausible *McClanahan* claim. This is not to say that Plaintiff has definitively proven his case. He has not. However, he does not need to do so at this point in the litigation; he must merely state a plausible claim for relief. *See Hecker,* F.3d at 580. Just as the plaintiff in *Saunders* had alleged enough to support the inference that her refused act may have been illegal and may have exposed her to personal liability, Plaintiff here has alleged enough to support the inference that operating the lift may have been illegal and may have subjected him to liability. 2011 WL 5386634, at *2-3. Hence, even if "many more facts are needed to determine whether such a violation would have taken place" if Plaintiff had agreed to operate the lift, *id.*, the Court will not dismiss Plaintiff's claim on this basis. *See id.* Additionally, Plaintiff has alleged but has not shown that he was fired due to his refusal to perform the allegedly unlawful activity, a causal link that was not at issue in *Saunders*. *See id.* at *2. Although this may be fatal later in the litigation, the Court will allow Plaintiff to move forward on this claim and further develop his case. Accordingly, the Magistrate Judge recommends that Defendant's Motion to Dismiss pursuant to Rule 12(b)(6) be **DENIED** with respect to Plaintiff's *McClanahan* claim.

### III. Conclusion

For the aforementioned reasons, the Magistrate Judge recommends that the Court **GRANT IN PART** and **DENY IN PART** Defendant's Motion to Dismiss [Dkt. 17.] Plaintiff's

---

[4] The Court does not reach the issue of whether Plaintiff's mere belief that the refused act would have been illegal is sufficient for *McClanahan* purposes. The refused actions at issue in the cases cited here were determined to be actually unlawful and therefore the issue was not reached in these cases either. *See Haas Carriage,* 651 N.E.2d at 288-89 (employee "was discharged for refusing to perform an unlawful act"); *McGarrity*, 774 N.E.2d at 78-79 (directives to financial employee would have caused him to violate various financial and/or conspiracy laws).

promissory estoppel claim against Defendant should be dismissed, and Plaintiff's *McClanahan* claim should proceed. Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), and failure to timely file objections within fourteen days after service shall constitute a waiver of subsequent review absent a showing of good cause for such failure.

Dated:  07/16/2015

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

To all counsel of record via the Court's ECF system.